JANUARY TERM, 1882, No. 224.      MARCH 9TH, 1882.

## Norton *versus* Lehn.

1. Where in an action to recover damages for an alleged breach of a contract of sale the plaintiff, who was the purchaser, relied upon a waiver of one of the conditions of the sale, and the Court charged the jury, " If you cannot be satisfied, and taking all the other testimony in the case into consideration, you believe that they are still exactly of the same weight in the case, then the evidence of the one offsets the testimony of the other, and their testimony is effectually neutralized," it was *held* to be error.

2. The *onus probandi* was clearly on the plaintiff, and, in the absence of proof of a waiver, he failed in his case.

3. It was error to charge that the plaintiff was entitled to recover, " if you find, first, that Mr. Norton (defendant) entered into an express agreement with Mr. Lehn that he should give his note, and in other respects comply within a certain time with the terms of the conditions of sale; or, second, if you can imply such an agreement by Mr. Norton's acts with Mr. Lehn," there being evidence of an express agreement but no evidence of any acts from which such an agreement could be implied.

Before SHARSWOOD, C. J. ; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Northampton County.*

Assumpsit by John S. Lehn against Horace M. Norton, to recover damages for an alleged breach of contract of sale.

Upon the trial of the case in the Court below, before REEDER, J., the following facts appeared :

The defendant, in November, 1875, became assignee for the benefit of creditors of Dietrich & Brother. On the 16th of December, 1875, he held a public sale of the effects of the assignors. Prior to the sale the conditions were read aloud. They provided " All accounts to be settled by cash or note before leaving the ground." There were knocked down to the plaintiff 150,000 unburned brick at a kiln for $500, and a platform wagon for $86. Plaintiff did not make settlement before leaving, and he testified :

" The sale was on Thursday, and on the next day, Friday, in the evening, right after supper, I went down to see Mr. Norton, and to ask him whether he would make a deduction of the interest on the note for sixty days if I would pay the cash, and he said he couldn't do that ; and then I asked him how the note should be drawn up, whether payable to order, or we or either of us, and I think I told him who I was going to get on the note, and then I told him that I could not attend to this thing on Saturday ; that I was very busy, as it was at the time we got in a good many country hides, and I couldn't leave the office, and I said I would fix it on Monday ; and then he said he would like to have it

[Norton *v.* Lehn.]

settled up on Saturday, but he intimated he would wait until Monday; and on Monday I got the note fixed up, which I have here.

" Q. When you went to Mr. Norton with a note on Monday, did you show him the note?

" A. There was a conversation took place that night before I took the note there to him. We talked about the brick, and Mr. Norton told me the Dietrich boys had taken the grates out from under the brick, and he says I would have to get new grate-bars, and I told him I would see about that when I went to burn the brick. This was at Norton's store, at Second and Northampton streets. When I went there on Monday night I had the note in my pocket, but on Monday noon I had already learned that he had sold the brick to somebody else. On Monday evening I took William Lehn down with me and presented this note to Mr. Norton, and he took it and looked at it, and he said, ' That's all right, but I have sold the bricks and wagon.' Then I handed the note to William Lehn to look at it, and then we went out. Mr. Norton did not tell me who he had sold the bricks and wagon to. . . . . .

" Q. Tell us exactly what took place at the conversation.

" A. Well, what I said before is all that took place. I went down there and offered to pay him, and asked him if he would take off a discount if I would pay the cash. He said he couldn't do that, he must have a note. Then I asked him how he wanted the note drawn up, and he said, ' Payable to order; we or either of us.' And then he told me that the boys had taken the grates out of the kiln, and I asked him, ' What boys?' and he said, 'The Dietrich boys;' and then I told him I couldn't attend to it on Saturday, and I would attend to it on Monday, and he said his counsel would like to have it closed up, but it would do on Monday."

Cross-examined :

" You said before that he intimated that it would do, and now you say he said it would do; which was it?

" A. Well, it amounts to about the same thing. He said in these words: ' That will do,' or something of that kind."

The defendant testified :

" Q. After the brick and wagon had been struck off to Mr. Lehn, when did you first see him?

" A. I am not positive whether it was Friday or Saturday, but it was two or three days after the sale. My impression was that it was the first of the week after the sale, but I wouldn't be positive that it was not the Friday or Saturday following the sale. Mr. Lehn came into my place while I was at the front arranging some goods, and he stated he had

[Norton *v.* Lehn.]

heard that the grates were out of the kiln, and I said that I knew nothing about it; and then he asked how many bricks were in the kiln, and I said I didn't know anything about that, and I asked him what that had to do with it, as he had bought them in a lump, and he replied that I must think he was a d—n fool to pay for it if he didn't know what was in it; and I said, 'If you are going to take those goods, it must be settled up:' and he said he would let me know, that he was going away the forepart of the week, and I said that that wouldn't do, he must settle up now, and he said he would do as he pleased. My impression is that I saw him next after that the latter part of the following week, or the Monday following that.

"Q. What took place then?

"A. He came into the store with another gentleman, and offered to tender me what he said was a note, and I said to him that he had not complied with the conditions of sale, and that I had been advised by my counsel to close the matter up, and I had sold the articles to another party. I had sold them to Mr. Chamberlain for the price bid by Mr. Lehn. I told him that the brick and wagon had been sold. He simply offered me the note, and I said I had no brick and no wagon; that he had not complied with the conditions, and then he and the other gentleman left."

There was evidence that the profit on the bricks was about $500.60, and that the wagon was worth probably $200 to $250.

The Court charged the jury, *inter alia*, as follows:

[" GENTLEMEN OF THE JURY: This is an action brought by John S. Lehn against Horace M. Norton to recover the difference in value between certain articles purchased by him at a sale by Horace M. Norton as assignee,—the difference in value between the price bid for them at that sale and their actual value.

"This claim is based upon the theory that the plaintiff, John S. Lehn, at that sale bid for these articles, and that they were knocked down to him under the conditions of sale, he being the highest and best bidder, and by reason of that being entitled to the goods so knocked off to him ; and that afterward, when he went to accept them, he was refused, because the defendant had sold them to some one else.

" If you find those facts as I have stated them to be true, and supported by the evidence, then Mr. John S. Lehn is entitled to recover. If they are not true, then he would not be entitled to recover.] . . . . .

[" A written contract can be extended by the parties concerned. They have a perfect right to extend the limit of

[*Norton v* Lehn.]

time for the fulfilment of a contract, and if the limit of time allowed for compliance with those conditions of sale was the time when the purchaser left the ground, and that limit was extended then or afterwards by an agreement between the parties,—if it was agreed between them that the other conditions of sale should be complied with in a certain time, or without regard to time, they would have had a perfect right to do so, and Mr. Norton would have had no right to make any disposition of the property until that time had expired.]

["An agreement is a mutual understanding between two persons to do a certain thing.] Both must understand the same thing from it. One man cannot enforce an agreement provided the other party did not mean what he himself understood from it. That is, both must understand the same thing of the agreement, one proposing the very thing that the other accepts,—the very thing that he understands that he accepts. So, in passing upon this question, as to whether there was a subsequent agreement allowing or extending the time in which the conditions of sale should be complied with, you must find that it was a mutual agreement, mutually understood,—a proposition made by Mr. Norton which he understood to mean exactly what Mr. Lehn meant to accept.

"Now, was there such an agreement? Whether there was such an agreement or not, gentlemen of the jury, is a question of fact for you, and upon which the Court will not comment. [It is a question the determination of which depends solely upon the evidence in this case, and the question is,— Did Mr. Norton at any time subsequent to the sale, or at the time of the sale, enter into an express agreement, or by his acts imply such an agreement with Mr. Lehn that he should give his note and in other respects comply within a certain time with the terms of the conditions of sale?]

"If you find that this was so, if you find that there was such an agreement which the plaintiff offered to comply with, then the plaintiff would be entitled to recover. If there was no such agreement, or if Mr. Norton did not understand or did not propose to enter into such an agreement with Mr. Lehn, and you find that to be true from the evidence, then your verdict would have to be for the defendant.

"In arriving at the question of damages, in the event that you should find for the plaintiff, you would have to say for what amount you rendered a verdict. To ascertain that amount, you would have to deduct the value of the price bid for the property on the day of sale from the actual value of the property at that time.

"Evidence has been offered for the purpose of convincing

[Norton v. Lehn.]

you what the value of the property was.　You must find the value from that testimony.

"Gentlemen of the jury, the counsel for the parties in this case have desired the Court to say something to you about the relative value of the testimony in this case, or rather in regard to the effect or weight of the testimony.　[Whatever conclusion you come to, you must arrive at that conclusion from the weight of the testimony.　If you find the testimony of two witnesses as to a certain fact standing alone, and they are all the witnesses on that point and there is not any other corroborating evidence, and they are of equal weight, one exactly balancing the other, then you must throw their testimony out if it cannot be reconciled.　When they are of equal weight, one offsets the other.　But if you find from the circumstances of the case that either of them is corroborated by the testimony of other witnesses, then you must give due consideration to such facts in passing upon their credibility.　If they are of equal credibility, then you must try to reconcile their testimony, and if you cannot reconcile it, you must render your verdict according to whichever testimony is the most entitled to consideration.

"If you cannot be satisfied, and, taking all the other testimony in the case into consideration, you believe that they are still exactly of the same weight in the case, then the evidence of the one offsets the testimony of the other, and their testimony is effectually neutralized."]

Counsel for defendant excepted to the charge.

December 21st, 1881.　Verdict for the plaintiff for $796.29 and judgment thereon.

The defendant then took a writ of error, assigning as errors those portions of the charge as above within brackets.

*James S. Downs* and *B. F. Fackenthall*, for plaintiff in error.

A verbal agreement, to be effectual and binding as an alteration of the express terms of a prior written contract between the parties, must be supported by a new and valid consideration, and a mere executory contract of this kind, to constitute an exception to this rule, must have been acted on so far that a refusal to carry it out would work a fraud on one of the parties: Thurston v. Ludwig, 6 Ohio St., 1; Wilgus v. Whitehead, 6 W. N. C., 538; Taylor v. Winters, 6 Phila., 126; Munroe v. Perkins, 9 Pickering, 298; McNish v. Reynolds, 10 W. N. C., 24.

On the subject of the conflict of testimony, the Court should have said to the jury that when the plaintiff's witness and the defendant's witness contradict each other, and there

is no circumstance to show which one is more likely to be correct, then the plaintiff cannot recover, because, having the affirmative of the issue, he can only recover in case his evidence has the preponderance, that is, weighs more than the defendant's does; that in cases of the equilibrium of testimony, the plaintiff loses and the defendant wins.

*Edward J. Fox*, for defendant in error.

The jury found the fact that Norton extended the time for the performance of the contract by Lehn.

The parties could extend the time without a new consideration: Carrier *v.* Dilworth, 59 Penna., 406; McNish *v.* Reynolds, 10 W. N. C., 24; Wilgus *v.* Whitehead, 8 Norris, 133.

The opinion of the Court was delivered by SHARSWOOD, C. J.

It was an undisputed fact that, according to the conditions of sale, all goods bought were to be settled for in cash or by note before leaving the ground. They were not so settled, and the defendant, as he had a right to do, sold the goods which had been knocked down to the plaintiff to another person. The only ground, then, of recovery by the plaintiff must have been that this condition had been waived and the time extended. The *onus probandi* of this was clearly upon the plaintiff. The Court, however, charged the jury that if from the conflict of the testimony of the plaintiff and defendant, with all the other testimony, they believed that they were exactly of the same weight, then the evidence of the one offsets the testimony of the other, and their testimony is effectually neutralized. This may be true in the abstract, but we think it was calculated to mislead the jury from the true point for their consideration, whether, upon the evidence, they believed the fact of the extension as alleged by the plaintiff, for, unless they did, the plaintiff failed in his case. A more material error, however, was committed by the learned judge in his charge as complained of in the fourth assignment of error: "If you find, first, that Mr. Norton entered into an express agreement with Mr. Lehn that he should give his note, and in other respects comply within a certain time with the terms of the conditions of sale; or, second, if you can imply such an agreement by Mr. Norton's acts with Mr. Lehn," the plaintiff was entitled to recover. After a careful examination of the evidence, we have failed to discover any acts of Mr. Norton with Mr. Lehn from which such an agreement could be implied. Mr. Norton, immediately on the failure of Mr.

[Steckel *et al. v.* Desh.]

Lehn to comply with the condition, sold the goods to another person, and refused the subsequent tender of compliance. The case should have been left upon the evidence as to the express agreement, and the jury not permitted to imply such an agreement without evidence.

Judgment reversed and a *venire facias de novo* awarded.